UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LTJ Enterprises, Inc.,

        Plaintiff,

v.

Custom Marketing Co., LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 13-2224 ADM/LIB

_____

Richard O. Bartz, Esq., Bartz & Bartz PA, Edina, MN, on behalf of Plaintiff.

Donald W. Niles, Esq., Niles Law Office P.A., Wadena, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On March 31, 2015, a claim construction hearing was held before the undersigned United States District Judge in this patent infringement action brought by Plaintiff LTJ Enterprises, Inc. ("LTJ") against Defendant Custom Marketing Co., LLC ("CMC"). LTJ alleges CMC infringes claims of its United States Patent No. 6,067,927 (the "'927 Patent").

## II. BACKGROUND

LTJ, a Minnesota corporation, has a principal place of business in Roseau, Minnesota. Compl. [Docket No. 1] ¶ 1. The '927 Patent was issued on May 30, 2000 and is currently owned after assignment by LTJ. Id. ¶ 8. In basic terms, the invention is a "bin level indicator used to provide a person with information as to the level of bulk material in a bin." Id. ¶ 6. Beginning at least as early as 2005, CMC purchased LTJ's bin level indicators for resale. Pl. Claim Construction Mem. [Docket No. 46] 1. In 2012, CMC stopped purchasing LTJ's bin level indicator and began marketing its "Grain Gauge" indicator, the allegedly infringing product. Id.

LTJ filed this infringement suit on August 15, 2013. The '927 Patent consists of 35

claims.  LTJ asserts CMC's indicator infringes on claims 18, 21, 24, 26, and 27.  The parties have been unable to agree on the construction of nine claim terms.  The disputed terms are found in claims 18 and 24.

      Claim 18 recites:

> An indicator for providing an indication of the level of material in a bin containing the material, said bin having a side wall with a hole for accommodating the indicator, comprising:  a body, visual means having an outer surface for indicating the level of the material in the bin, means rotatably mounting the visual means on the body for movement between an ON position and an OFF position indicating the level of the material in the bin, a transparent member attached to the body enclosing the visual means within the body and transparent member, means having a bright color on a first portion of the outer surface providing a visual indication of the ON position of the indicator, the remaining portion of the outer surface having a dark color providing a visual indication of the OFF position of the indicator, an arm, means pivotally mounting a first end portion of the arm on the body for movement between first and second positions, motion transmitting means connecting a second end portion of the arm to the visual means operable to rotate the visual means between the ON and OFF positions in response to generally upward and downward movement of the second end portion of the arm, and actuator means connected to the arm adapted to be located within the bin for moving the arm to the first position when the material in the bin engages the actuator means and moving the arm to the second position when the material in the bin does not engage the actuator means whereby the arm operates the motion transmitting means which rotates the visual means between its ON and OFF positions.

Mezera Aff. [Docket No. 47] Ex. A ("'927 Patent") 10:56–11:16.  The terms in dispute in claim 18 are "body," "arm," and "generally upward and downward movement of the second end portion of the arm."  Joint Claim Construction Statement [Docket No. 39] Schedule A 1–2.  The means-plus-function terms in dispute in claim 18 are "means pivotally mounting a first end portion of the arm on the body for movement between first and second positions," "motion transmitting means connecting a second end portion of the arm to the visual means operable to rotate the visual means between the ON and OFF positions in response to generally upward and

downward movement of the second end portion of the arm," and "actuator means connected to the arm adapted to be located within the bin for moving the arm to the first position when the material in the bin engages the actuator means and moving the arm to the second position when the material in the bin does not engage the actuator means whereby the arm operates the motion transmitting means which rotates the visual means between its ON and OFF positions."  Id.

Claim 24 recites:

> An indicator for providing an indication of the level of material in a bin containing the material, said bin having a side wall with a hole for accommodating the indicator, comprising:  a body, visual means having an outer surface rotatable mounted on the body for movement between an ON position and an OFF position, a transparent member attached to the body enclosing the visual means within the body and transparent member, means having a bright color on a first portion of the outer surface providing a visual indication of the ON position of the indicator, the remaining portion of the outer surface having a dark color providing a visual indication of the OFF position of the indicator, an arm, means movably mounting the arm on the body for movement between first and second positions, motion transmitting means connecting the arm to the visual means operable to rotate the visual means between the ON and OFF positions in response to movement of the arm, and actuator means connected to the arm adapted to be located within the bin for moving the arm to the first position when the material in the bin engages the actuator means and moving the arm to the second position when the material in the bin does not engage the actuator means whereby the arm operates the motion transmitting means which rotates the visual means between its ON and OFF positions, the motion transmitting means includes a rack having teeth connected to the arm, and a gear joined to the visual means, said teeth of the rack being engageable with the gear whereby movement of the arm rotates the visual means between its ON and OFF positions.

'927 Patent 11:45–12:6.  The terms in dispute in claim 24 are "body," "arm," "rack," and "gear." Joint Claim Construction Statement, Schedule A 1–3.  The means-plus-function terms in dispute in claim 24 are "means movably mounting a first end portion of the arm on the body for movement between first and second positions," "actuator means connected to the arm adapted to be located within the bin for moving the arm to the first position when the material in the bin

engages the actuator means and moving the arm to the second position when the material in the bin does not engage the actuator means whereby the arm operates the motion transmitting means which rotates the visual means between its ON and OFF positions," and "motion transmitting means connecting the arm to the visual means operable to rotate the visual means between the ON and OFF positions in response to movement of the arm."  Id.

### III.  DISCUSSION

**A.  Standard of Review**

Claim construction is a matter of law.  Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).  In construing claims, courts should look first to intrinsic evidence, which includes the claims, the specification, and the prosecution history.  Vitrionics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Claim terms are "generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  Phillips v. AWH Corp., 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (quotation and citations omitted).  However, a patentee can choose to be "his or her own lexicographer by clearly setting forth an explicit definition for a claim term."  Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999).  Claim terms "should be construed consistently with [their] appearance in other places in the same claim or other claims of the same patent."  Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001).  In addition, the specification is usually "dispositive; it is the single best guide to the meaning of a disputed term."  Vitrionics, 90 F.3d at 1582.  Courts are nonetheless cautioned not to import limitations from the specification into the claims.  Phillips,

415 F.3d at 1323; Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1347 (Fed. Cir. 1998).

While courts can consider extrinsic evidence to educate themselves about the patent and technology at issue, it is improper to rely on extrinsic evidence in construing claims unless, after consideration of all the intrinsic evidence, ambiguity remains. Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc., 152 F.3d 1368, 1373 (Fed. Cir. 1998); Vitrionics, 90 F.3d at 1584. Extrinsic evidence is "evidence which is external to the patent and file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles." Vitrionics, 90 F.3d at 1584. Dictionaries may be useful to courts in understanding the ordinary and customary meaning of words, and courts may "rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." Phillips, 415 F.3d at 1322–23.

**B. Claim Construction**

**1. "Body" in Claims 18 and 24**

LTJ submits that the term "body" "is any structure enclosing in part, supporting visual members, and mountable on a side wall of a bin." Pl.'s Claim Construction Mem. 6. CMC argues that "body" is "a rigid casing that encloses and protects a mechanism." Def.'s Claim Construction Mem. [Docket No. 48] 10.

The definitions proposed by the parties must be rejected because they each would create inconsistencies throughout the claims. Rexnord Corp., 274 F.3d at 1342. "Body" is a commonly used term, appearing in 18 of the 35 claims. While "body" is generally used to describe a supporting structure that other components mount onto, its usage is not limited to just "supporting visual members," as proffered by LTJ. The claims themselves teach that a "body" is

also used to support the actuator means, which, while providing the motion that manipulates the visual members, is distinct from the visual members themselves. '927 Patent 10:20–30. "Body" is also not limited to a "rigid casing," as CMC proposes. Neither the claims nor the specification support this limitation; CMC's proposed definition thus impermissibly seeks to limit the scope of a claim term and must be rejected. The term "body" will be given its plain and ordinary meaning.

### 2. "Arm" in Claims 18 and 24

LTJ submits that the term "arm" "is any structure projected outwardly from a pivot point to a gear drive connected to the visual members." Pl.'s Claim Construction Mem. 4-5. CMC argues that "arm" is "a rigid, solid, straight, cylindrical rod." Def.'s Claim Construction Mem. 12. CMC maintains that LTJ's definition must be rejected for two reasons. First, CMC argues that LTJ's "any structure" definition would encompass mechanisms that are inconsistent with the remaining claims and the specification. Second, CMC argues that, to remain consistent with the remaining claims, the motion transmitting means has to be connected to a guide member, which is a separate and distinct structure to the arm. According to LTJ, the arm is not limited to any particular size or shape so long as it coupled in the appropriate locations and allows for rotational power to be transferred from the end located inside of the bin to the end located outside of the bin. LTJ argues that CMC's definition creates limitations that are not found in the specification.

The claims teach that "arm" is a structure connected to both the motion transmitting means and the actuator means that moves in response to the presence or absence of material in the bin. '927 Patent 11:56–66. Contrary to CMC's suggestions, the claims do teach that the arm

can be directly connected to the motion transmitting means. Indeed, the "motion transmitting means includes a rack having teeth connected to the arm." Id. 12:1–2. While the embodiment does contemplate a distinct and separate guide member that acts as an intermediate part connecting the arm to the motion transmitting means, limitations that appear only in the specification are not to be used in interpreting the claims. See Phillips, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, [the Federal Circuit Court of Appeals has] repeatedly warned against confining the claims to those embodiments.").

CMC is also incorrect in asserting that arm must be "solid," "straight," or "cylindrical." In addition to these limitations not being found in the claims, the functionality of the arm would not be compromised if the arm structure was hollow, curved, or flat. CMC's proposal must be rejected.

LTJ's definition is only partially sufficient. The arm must also extend beyond the pivot point into the bin and connect to the actuator and pivot or move in response to when the material in the bin engages the actuator. See '927 Patent 11:9–12 ("actuator means connected to the arm adapted to be located within the bin for moving the arm to the first position when the material in the bin engages the actuator"). As CMC's proposed definition contemplates, only certain structures are able to accomplish the rotational power transfer contemplated by the claims. Thus, LTJ's proposed "any structure" is inconsistent with the claims and adopting it would be error. "Arm" will be given its plain and ordinary meaning.

### 3. "Generally upward and downward of the second end portion of the arm" in Claim 18

The parties dispute the trajectory of the second end portion of the arm. LTJ contends that the second end of the arm moves generally up and down but also includes a forward and backward component. CMC proposes a construction that only allows for vertical movement.

According to LTJ, strictly linear movement of the second portion of the arm would render the connection to the spur gear inoperable. LTJ argues that rotating a spur gear requires at least some degree of rotational force. CMC counters that the motion transmitting means is distinct from the arm, has vertical and linear movements, and operates in response to up-and-down movements of the arm. The basis for CMC's position is the prosecution history, specifically LTJ's amendment to claim 18 and its discussion of prior art.

Statements made during prosecution may also affect the scope of the claims. Rexnord Corp., 274 F.3d at 1343. "[A] patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." Purdue Pharma L.P. v. Endo Pharms., Inc., 438 F.3d 1123, 1136 (Fed. Cir. 2006). Prosecution disclaimer does not apply to an ambiguous disavowal. See N. Telecom Ltd. v. Samsung Elec. Co., 215 F.3d 1281, 1293–95 (Fed. Cir. 2000) (holding that prosecution disclaimer did not support limiting a clear claim term because the statements made during prosecution were open to multiple reasonable interpretations).

The prosecution history does reflect that claim 18 was amended to include the "generally upward and downward" language and that the amendment "change[s] the vertical generally linear movements of the arm into rotational movements of the visual means." Niles Decl. [Docket No. 49] 56. In discussing prior art, LTJ stated to the examiner that "there is no motion

transmission means between arm **52** and body **60** that changes up and down linear movement of the arm to rotational movement of the body. . . ." Id. at 57.  These statements, however, do not rise to the level of clear, unambiguous disavowal required for prosecution disclaimer.  The amendment and the corresponding remarks include the word "generally" to describe the path of arm movement.  Unqualified, "upward," "downward," and "linear" describe movement along a straight line.  By inserting the word "generally" alongside the directional words in the amendment, LTJ did not unambiguously disclaim any movement of the arm that was not strictly linear.

The jury will understand that "generally upward and downward movement of the second end portion of the arm" means that the movement of the second end portion of the arm is not strictly limited to linear, up and down movement.  Any further construction of this term is unnecessary and risks confusing the jury.

### 4.  "Rack" in Claim 24

LTJ submits that the term "rack" does not need to be construed.  CMC proposes that the term "rack" is "a straight bar having equidistant teeth that lie in one plane rather than being distributed around a wheel.  It is equivalent to a gear of infinite radius."  Def.'s Claim Construction Mem. 20.  The crux of this dispute is the shape of the rack; LTJ contends that "rack" can be straight or curved while CMC argues that it must be linear.  CMC cites the specification and the prosecution history in support of its position.  CMC argues that the specification provides "rack" as a first alternative and "generally linear teeth" as the second alternative.  CMC also avers that LTJ amended the claims to specify a "rack" and thus prosecution history estoppel bars LTJ from recapturing the wider scope of protection it

relinquished in order to secure the patent.

CMC's proposed definition first attempts to import a limitation from the written description into the claim. See Playtex Prods., Inc. v. Procter & Gamble Co., 400 F.3d 901, 906 (Fed. Cir. 2005) ("the court must take care in its analysis, when locating in the written description the context for a disputed term, not to import a limitation from that written description. It must use the written description for enlightenment and not to read a limitation from the specification [into the construction of the term].") The phrase "generally linear teeth" is found only in the written description. Additionally, "mesh with a generally linear gear teeth or rack," does not unambiguously identify distinct structures. '927 Patent 5:45. To the contrary, that phrase could be reasonably construed to identify the "rack" as having "generally linear gear teeth." Most importantly, the claims teach that the teeth of the rack connect with the arm to rotate the visual means between its on and off positions. Id. 12:2. Therefore, the movement of the arm needs to engage the rack for the invention to perform. As just discussed, the movement of the second end portion of the arm, the end that directly interacts with the rack, is not limited to strictly linear movement; the claims use the phrase "generally upward and downward movement." Id. 11:8. It follows that the shape of the rack must correspond to the movement of the arm. Since the arm is not limited to strict up and down linear movement, the rack cannot be limited to being a straight bar.

The prosecution history shows that independent claim 24 was previously written as claim 22 dependent on claim 18. In the 6/9/99 office action, the patent examiner rejected claim 18 as unpatentable over prior art. In the subsequent amendment, claim 22 was rewritten as independent claim 24, and claim 18 was approved after the "connections" of the arm were

defined with more specificity to overcome the prior art. Niles Decl. 60. According to CMC, this narrows the scope of the patent's protection, disclaiming the territory between the original claim and the amended claim. CMC cites <u>Festo Corp. v. Shoketsu Kogya Kabushiki Co.</u>, as authority for its position. 535 U.S. 722 (2002). In <u>Festo</u>, the Supreme Court held that a narrowing amendment made to satisfy a requirement of patentability may give rise to an estoppel. <u>Id.</u> at 736. The Court noted that the proper focus is whether the amendment narrows the overall scope of the claimed subject matter. <u>Id.</u> at 736–37. In <u>Honeywell Intern. Inc. v. Hamilton Sundstrand Corp.</u>, the Federal Circuit addressed "whether rewriting a dependent claim into independent form, coupled with the cancellation of the original independent claim, constitutes a narrowing amendment." 370 F.3d 1131, 1141 (Fed. Cir. 2004). Here, however, the original independent claim 18 was not cancelled; rather, it was amended to more particularly define the invention and to overcome prior art. Prosecution history estoppel does not apply because the amendment did not narrow the claims to affect a restrictive definition of "rack." <u>Festo</u>, 535 U.S. at 736. Rack does not require construction.

### 5. "Gear" in Claim 24

The parties dispute the shape of the gear. LTJ argues that the term "gear" does not need to be construed. CMC submits that the term "gear" is "a toothed wheel that rotates about a center point, or a portion of such a wheel that includes teeth and the center point." Def.'s Claim Construction Mem. 22. According to LTJ, CMC's proposed definition creates an unnecessary limitation on the claim and precludes other equivalents, such as ring gears or spiral bevel gears.

The Court finds CMC's definition is too restrictive. A gear does not have to be circular. Gears can be oval, square, triangular, or other shapes. LTJ correctly asserts that the claims

describe the relationship between the gear and rack structures and not the item itself. Indeed, as used in the claims, the gear must have teeth that interact with the teeth of the rack to rotate the visual means. The Court further agrees with LTJ that the term "gear" will be understood by the jury without lengthy definition. Accordingly, "gear" does not need to be construed.

**C. Means-Plus-Function Claims**

35 U.S.C. § 112(f) allows a patentee to express a claim limitation "as a means for performing a specified function without the recital of structure, material, or acts in support thereof."[1] This provision applies "only to purely functional limitations that do not provide the structure that performs the recited function." Inventio AG v. Thyssenkrupp Elevator Ams. Corp., 649 F.3d 1350, 1356 (Fed. Cir. 2011) (citing Phillips, 415 F.3d at 1311). If a patentee has used means-plus-function form, then the analysis under 35 U.S.C. § 112(f) is a two-step process: (1) the Court construes the function recited, and (2) determines what structures have been disclosed in the specification that correspond to the means for performing the identified function. Kemco Sales, Inc. v. Control Papers, Co., 208 F.3d 1352, 1361 (Fed. Cir. 2000). The patentee has a "duty to clearly link or associate structure with the claimed function." Med. Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1211 (Fed. Cir. 2003) (citing Budde v. Harley-Davidson, Inc., 250 F.3d 1369, 1377 (Fed. Cir. 2001)). The use of means-plus-function form in claims is a convenience to the patentee; "the price that must be paid for use of that convenience is limitation of the claim to the means specified in the written description and equivalents thereof." Id. As a matter of law, the scope of the claim covers the corresponding

---

[1] 35 U.S.C. § 112(f) was formerly designated as 35 U.S.C. § 112, ¶ 6, but the language of the section is the same.

structure and its equivalents. 35 U.S.C. § 112(f). <u>Mettler-Toledo, Inc. v. B-Tek Scales, LLC</u> (B-Tek), 671 F.3d 1291, 1296 (Fed. Cir. 2012) ("Our case law is clear that a means-plus-function claim limitation is limited to the structures disclosed in the specification and equivalents.").

### 1. "Means pivotally (18)/movably (24) mounting a first end portion of the arm on the body for movement between first and second positions" in Claim 18 and 24

LTJ argues that the function of this means-plus-function claim is "to mount the first end of the arm on the body such that it pivots or moves." CMC argues that the function is to "pivotally/movably mount the first end portion of the arm on the body to effectuate a specific movement between the first and second positions of the arm."

The function is to mount the first end portion of the arm on the body to pivot or move between the first and second positions of the arm. This is consistent within the context of the claims and appropriately describes the function of the disputed claim.

In regards to the structure, LTJ argues that "movably" in claim 24 and "pivotally" in claim 18 are synonymous, and that they include any structure that provides pivotal movement. LTJ further argues that defining the arm's movement is unnecessary and that the claimed pin-like structure need not be fixed to the body. CMC contends that the structure is "an arm pivotally mounted on a stationary pin supported by and fixed to the body; the pin is located near the end of the arm that is directly connected to the actuator, and the pin limits the arm's movement to a single vertical plane." CMC argues that the pin must be fixed to the body.

Determining the structure that corresponds to the function starts with the language of the claim, but then turns to examine the language of the specification. <u>See</u> <u>Golight, Inc. v. Wal-Mart Stores, Inc.</u>, 355 F.3d 1327, 1333–34 (Fed. Cir. 2004) (noting that, after defining the particular

function of the means-plus-function claim, "[t]he next step . . . is to look to the specification and identify the corresponding structure for that function."). The specification states that "[a] pin **77** pivotally mounts arm **74** on the inside end of support **49**." '927 Patent 5:37–39. Therefore, a pin is necessary to pivotally mount the arm. The patent does not disclose any other structure that performs this function and the pin is not ascribed any other purpose.

CMC is correct that the pin needs to be fixed to the body. The specification does not identify any structures that serve to "mount" the arm to the body. Without any such structures, LTJ's contention that the pin need not be fixed to the body fails. CMC is also correct that the arm's movement is limited to a single vertical plane. Defining the movement of the arm will aid the jury's understanding.

CMC's proposed structural definition, however, falls short in some respects. For one, CMC's proposal does not identify the pin's relative location on the arm with the particularity described in the specification. Additionally, it is superfluous to describe the body as supporting the pin if the pin is fixed to the body. Therefore, the structure of this means-plus-function claim is: a pin that is fixed to the body and located on the outer end of the arm near the inner end of the arm that allows the arm to move within a single vertical plane.

### 2. "Motion transmitting means connecting a second end portion of the arm to the visual means operable to rotate the visual means between the ON and OFF positions in response to generally upward and downward movement of the second end portion of the arm" in Claim 18

The Court agrees with LTJ that the function is "to rotate the visual means between the ON and OFF positions in response to generally upward and downward movement of the second end portion of the arm." LTJ asserts the corresponding structure is:

> any gear teeth connected to the arm such that they rotate and provide force to a

> gear connected to the visual members. The gear teeth engage the gear whereby movement of the arm rotates the gear and visual members between ON and OFF positions. The gear teeth need not move in an exactly linear fashion.

Joint Claim Construction Statement Schedule A 1. CMC asserts that this element is:

> a gear drive consisting of a spur gear that rotates the visual indicator and a guide member distinct from and directly connected to the second end portion of the arm. The guide member has an enclosed oval ring partially lined with generally linear gear teeth or a rack that mesh with the spur gear. The second end of the arm has flat try sides that fit into matching flat sides of a slot in the guide member. The guide member moves with the up and down movement of the pivoting arm to provide a vertical and linear motion of the generally linear gear teeth or a rack that rotates the spur gear and the visual means between the ON and OFF positions.

Def.'s Claim Construction Mem. 14.

The claim language states that the corresponding structure connects the second end portion of the arm to the visual means; it is the structure that interacts with the movement of the second end portion of the arm to manipulate the visual means. The specification teaches, and the parties agree, that the "motion transmission assembly" is a gear drive. '927 Patent 5:37. The gear drive comprises "a spur gear **83** mounted on shaft **64** and joined to disk **63** of visual member **54**." Id. 5:43–44. The teeth of the spur gear mesh with "a generally linear teeth or rack **84** on guide member **86**." Id. 5:45–46. The "generally linear" language corresponds to the "generally upward and downward" language found in the claim. As argued by LTJ, the adverb "generally" operates to modify "upward" and "downward" to allow some deviation from strictly up and down. See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1311 (Fed. Cir. 2003) ("[T]he phrase 'generally parallel' envisions some amount of deviation from exactly parallel."); see also Ecolab, Inc. v. Envirochem, Inc., 264 F.3d 1358, 1367 (Fed. Cir. 2001) (noting "that like the term 'about,' the term 'substantially' is a descriptive term

commonly used in patent claims to avoid a strict numerical boundary to the specified parameter.") (internal quotation marks omitted).

CMC argues that the prosecution history supports its position that the connections to the arm need to be defined with specificity. The Court disagrees. The structures identified by CMC are structural features that do not actually perform the recited function and thus do not serve as claim limitations. Asyst Techs., Inc. v. Empak, Inc., 268 F.3d 1364, 1370 (Fed. Cir. 2001). The corresponding structure "for a means-plus-function limitation should not be defined to include every structural detail recited in the written description." Toro Co. v. Textron, Inc., 502 F. Supp. 2d 904, 912 (D. Minn. 2007) (citing Micro Chem., Inc. v. Great Plains Chem. Co., 194 F.3d 1250 (Fed. Cir. 1999)). Accordingly, the structure corresponding to the claimed function to rotate the visual means between the ON and OFF positions in response to generally upward and downward movement of the second end portion of the arm is "a gear drive" and "a generally linear teeth or rack on guide member."

**3. "Actuator means connected to the arm adapted to be located within the bin for moving the arm to the first position when the material in the bin engages the actuator means and moving the arm to the second position when the material in the bin does not engage the actuator means whereby the arm operates the motion transmitting means which rotates the visual means between its ON and OFF positions" in Claim 18**

The function is "to move the arm to the first position when the material in the bin engages the actuator means and moving the arm to the second position when the material in the bin does not engage the actuator means." "Connect[ing] the arm adapted to be located within the bin" is a structural limitation, not a functional limitation. See Kinzenbaw v. Case LLC, 179 Fed. Appx. 20, 24 (Fed. Cir. 2006). LTJ argues that the corresponding structure is "any structure connected to the arm that, when engaged by the material in the bin, moves the arm to a first

16

position by rotating about the pivot means, and returns to a second position when disengaged. One structure identified in the specification is a pair of wings or flexible extensions." CMC argues that the element is "[a] flexible sheet fastened to a strap or a bar that is entirely within the bin and directly fastened to the pivoting arm, with a movement of the bar pivoting the arm to thereby directly interact with the [motion transmitting means-plus-function structure]."

The specification teaches that the corresponding structure is a flexible body that is connected to a rigid spring strap or bar. See '927 Patent 6:22–23:27–28. CMC argues that the structure definition includes a specific placement, namely that the structure must be located within the bin. LTJ argues that the language "adapted to be located within the bin" describes the shape of the actuator means, not the location. The Court agrees with CMC. The claims teach that the actuator means is connected to the arm that is adapted to be in the bin. Thus, the actuator means must be in the bin. Accordingly, the corresponding structure is "a flexible body located inside the bin that is connected to a rigid spring strap or bar."

**4. "Motion transmitting means connecting the arm to the visual means operable to rotate the visual means between the ON and OFF positions in response to movement of the arm" in Claim 24**

The function is "to rotate the visual means between the ON and OFF positions in response to movement of the arm." LTJ argues that the corresponding structure is broader than the similar language in claim 18, discussed above. LTJ reasons that claim 24 was amended from a dependent claim into independent form without changes to the language itself. CMC proposes the same construction of this clause that it proposed for the corresponding clause found in claim 18.

The Court agrees in principle with CMC, that the corresponding structure here is the

same as the corresponding structure for the similar clause in claim 18. As described above, the specification teaches that the motion transmission assembly is a gear drive comprising a spur gear that has teeth that mesh with the generally linear teeth or rack on the guide member. Thus, the structure is "a gear drive" and "a generally linear teeth or rack on guide member."

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that in interpreting the '927 Patent the disputed terms will be construed in accordance with this Order.

BY THE COURT:


     s/Ann D. Montgomery  
ANN D. MONTGOMERY  
U.S. DISTRICT JUDGE

Dated: June 8, 2015.